UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY VESCI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PACIFIC WEST SITE SERVICES, INC., SBM SITE SERVICES, LLC, SVC OIL FIELD SERVICES, LLC, CHARLES SOMERS, and DOES 1 through 50, inclusive,<br><br>　　　　Defendants. | No.  2:14-cv-00049-TLN-AC<br><br>**ORDER** |

　　　　This matter is before the Court on Plaintiff Gary Vesci's ("Plaintiff" or "Vesci") motion to remand pursuant to 28 U.S.C. §1447. (See Pl.'s Mot. to Remand, ECF 8.)  Also before the Court is Defendants Pacific West Site Services, Inc.'s, ("Pacific West"), SBM Site Services, LLC's ("SBM"), SVC Oil Field Services, LLC's ("SVC"), and Charles Somers' ("Somers"), (collectively, "Defendants"), motion to transfer pursuant to the first-to-file rule and 28 U.S.C. §1404(a) or, in the alternative, to order a stay pending resolution of the North Dakota action. (See Defs.' Mot. to Transfer, ECF 3.)  For the reasons set forth below, Plaintiff's motion is GRANTED and Defendants' motion is DENIED.[1]

---

[1] 　　Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. L.R. 230(g).

**BACKGROUND**

In May of 2012, Plaintiff began corresponding with Somers regarding his business plan for an oilfield services company in North Dakota. (ECF 1, Ex. A ¶ 10-11.) Shortly thereafter, Plaintiff met with Somers and his associates to discuss Plaintiff's business plan. (Id. ¶ 12.) Plaintiff and Somers then orally agreed to establish a business that would support the oil drilling and operating industry. (Id. ¶ 15.) Under the terms of their agreement, Somers was to provide startup capital for the business and employ Plaintiff at a salary of $10,000 per month, while Plaintiff was to secure clientele and hire staff. (Id. ¶ 18.) Plaintiff contends that his agreement with Somers also provided for a 12.5% ownership interest in the new venture, which later became SVC. (Id. ¶ 15.) Pacific West claims Plaintiff agreed that their respective ownership interests in SVC would need to be finalized in writing. (ECF 3, Ex. B ¶ 15.)

Once employed, Plaintiff contracted for the delivery of skate and casing equipment that SVC needed to conduct business beginning in early September of 2012. (ECF 1, Ex. A ¶ 21.) Casing trucks were not completed until mid-October 2012, however, and skates not delivered until approximately October 28, 2012. (Id. ¶ 27.) In the interim, SVC was limited to offering clean and drift services. (Id. ¶ 22.) Plaintiff contends that he worked to "pre-sell" skate and casing services during this period, and that he did, in fact, sell clean and drift services. (Id. ¶ 23-24.) Still, Plaintiff alleges that Somers terminated his employment after Somers became upset that Plaintiff had not pre-sold enough business. (Id. ¶ 25.) Pacific West instead claims that SVC terminated Plaintiff because he misrepresented the nature of his business contacts as well as his industry knowledge and experience, failed to offer any value, and behaved erratically. (ECF 3, Ex. B ¶ 18-19, 26.)

The parties' failed business arrangement prompted Pacific West to file an action against Vesci in the United States District Court for the District of North Dakota on March 19, 2013. (ECF 3, Ex. B.) In the North Dakota action, Pacific West seeks monetary damages in addition to a declaration from the court that Vesci holds no ownership interest in SVC. (Id.) Plaintiff subsequently filed this action in the Superior Court of California, County of Sacramento, on November 14, 2013. (Defs.' Notice of Removal, ECF 1, Ex. A.) Plaintiff seeks monetary

1  damages and a declaration from the court that he is entitled to fractional ownership of SVC. (Id.)
2  On January 8, 2014, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1441
3  and 1446. (ECF 1). Plaintiff now moves to remand the action to state court in accordance with
4  28 U.S.C. § 1447. (ECF 8.) Defendants oppose the motion, and move to transfer the action to the
5  United States District Court for the District of North Dakota pursuant to the first-to-file rule and
6  28 U.S.C. 1404(a), or alternatively, to order a stay. (ECF 3) Plaintiff opposes the motion. (Pl.'s
7  Opp'n to Mot. to Transfer, ECF 14.)

**STANDARD**

9  A civil action brought in state court, over which the district court has original jurisdiction,
10 may be removed by the defendants to federal court in the judicial district and division in which
11 the state court action is pending. 28 U.S.C. §1441(a). The Ninth Circuit has instructed district
12 courts to strictly construe the removal statute against removal jurisdiction. Gaus v. Miles, Inc.,
13 980 F.d2 564, 566 (9th Cir. 1992). Consequently, federal jurisdiction is defeated if there is any
14 doubt as to the right of removal in the first instance. Libhart v. Santa Monica Dairy Co., 592 F.2d
15 1062, 1064 (9th Cir. 1979). In the context of diversity cases, the Supreme Court has
16 distinguished removal jurisdiction from original jurisdiction, holding that there is a "strong
17 presumption" against removal. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-
18 290 (1938). This strong presumption cannot be overcome unless the defendant proves that
19 removal was proper. Libhart, 592 F.2d at 1064. If it appears that the district court lacks subject
20 matter jurisdiction, the case shall be remanded. 28 U.S.C. §1447(c).

21 The district court has original jurisdiction over all civil actions arising under the
22 Constitution, laws or treaties of the United States. 28 U.S.C. 1331. It also has jurisdiction over
23 civil actions between citizens of different states in which the alleged damages exceed $75,000.
24 28 U.S.C. 1332(a)(1). In the latter case, federal courts require complete diversity among the
25 parties; that is, the citizenship of each plaintiff must be diverse from the citizenship of each
26 defendant. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996). The party asserting diversity
27 jurisdiction bears the burden of proving complete diversity. Lew v. Moss, 797 F.2d 747, 749 (9th
28 Cir. 1986), (citing Resnik v. La Paz Guest Ranch, 289 F.2d 814, 819 (9th Cir. 1961)). The

citizenship of all parties is to be determined with respect to the facts as they existed when the action was filed.[2]  Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 571 (2004).

## ANALYSIS[3]

A. Plaintiff's Citizenship

In their notice of removal, Defendants argue that Plaintiff is a citizen of North Dakota. (Defs.' Notice of Removal, ECF 1 ¶ 9.)  In his state court complaint, however, Plaintiff pleads that he is a resident of Sacramento County, California.  (ECF 1, Ex. A ¶ 1.)  The state citizenship of a natural person is not determined by his or her state of residence, but rather by his or her state of domicile.  Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  One's domicile is his or her permanent home; in other words, where he or she resides with the intent to remain or to which he or she intends to return after residing elsewhere.  Id.  Such intent is determined by reference to multiple objective factors including current residence, voting registration and practices, location of personal and real property, location of brokerage and bank accounts, location of a spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes. Kyung Park v. Holder, 572 F.3d 619, 624-625 (9th Cir. 2009), (citing Lew, 797 F.2d at 750).

To meet their burden of proof, Defendants rely heavily on orders of the North Dakota court respecting Vesci's citizenship.  First, they cite to the North Dakota court's order denying Vesci's motion to dismiss, or in the alternative, motion to transfer, filed on May 2, 2013.  (Defs.' Opp'n to Mot. to Remand, ECF 10 at 3:5-13.)  This order is unavailing, however, as the court does not render findings on the question of Vesci's citizenship therein.  (ECF 3, Ex. 3.)  In fact,

---

[2]   The Court is mindful that it must also determine the parties' citizenship as of the date of removal.  Cf. Strotek Corp. v. Air Transp. Ass'n of America, 300 F.3d 1129, 1131 (9th Cir. 2002) ("[W]e start with the core principle of federal removal jurisdiction on the basis of diversity— namely, that it is determined (and must exist) as of the time the complaint is filed and removal is effected.").  Here, neither side argues that any party's citizenship changed between the date Plaintiff filed his complaint in state court and the date Defendants removed the case to federal court. Therefore, the Court's analysis is based upon the circumstances that existed when the complaint was filed.

[3]   As set forth below, the Court finds that it lacks subject matter jurisdiction given the joinder of non-diverse parties to the action.  In light of its determination, Defendants' motion to transfer, or in the alternative, stay this action (ECF 3) is DENIED as moot.

the North Dakota court plainly states that Vesci resides in California. (Id. at 12.) Next, Defendants cite to the North Dakota court's order denying Vesci's motion to dismiss for lack of subject matter jurisdiction, filed on November 14, 2013. (ECF 10 at 3:14-4:2.) In light of the court's finding that Vesci was a citizen of North Dakota when that lawsuit was filed, Defendants posit that Vesci remains a North Dakota citizen. (ECF 10 at 3:25.) In so doing, however, Defendants conflate two distinct actions that commenced nearly eight months apart. In essence, while the North Dakota district court initially found Vesci to be domiciled in North Dakota for purposes of diversity jurisdiction, they later found he had a residence in California. Finally, Defendants direct this Court to the North Dakota court's order denying Vesci's motion for reconsideration of his motion to dismiss for lack of subject matter jurisdiction, filed on February 13, 2014. (Defs.' RJN, ECF 22, Ex. A.) Since the court declined to reconsider its previous ruling under Federal Rule of Civil Procedure 60(b), it did not reach the merits of the evidence Vesci proffered in support of his motion. This Court, however, views evidence of Vesci's California citizenship with fresh eyes.

Still, Defendants argue that this Court should not revisit the question of Vesci's citizenship. (ECF 10 at 10:19-20.) They argue, instead, that the North Dakota court's January 23, 2014, ruling regarding Vesci citizenship should stand as law of the case. (Id. at 10:20.) Defendants misconstrue the law of the case doctrine under which "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." U.S. v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997), (quoting Thomas v. Bible, 893 F.2d 152, 154 (9th Cir. 1993)). First, Plaintiff's citizenship has not been determined by this Court or a higher court. Second, despite Defendants' repeated arguments to the contrary, this case and the North Dakota action are not identical. The law of the case doctrine does not preclude this Court from addressing the question of Plaintiff's citizenship. Thus, this Court will no resolve the issue in the instant case.

Plaintiff asserts that he has been domiciled in California since fall of 2012. (ECF 8 at 4:7-8.) After living elsewhere in recent years, Plaintiff states that he has returned to make California his home and was physically present in California when the state court action commenced. (Id. at

5

4:14-16.)  In their opposition, Defendants argue that self-serving statements regarding a party's domicile should be treated with skepticism when the facts conflict.  (ECF 10 at 11:4-10.) Defendants recite the law correctly, but skepticism of Plaintiff's assertion is unwarranted in view of the facts.

The first of the two prongs analyzed to determine a natural person's citizenship is his or her place of residence.  Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001).  In documents filed with his RJN, Plaintiff declares that he moved to California on or about November 30, 2012, and began living with his father and cousin in Sacramento the following month.  (ECF 16, Ex. E ¶¶ 2-3.)  Plaintiff then states that he entered into a residential lease for property in South Lake Tahoe on June 27, 2013.  (Id. ¶ 6.)  Plaintiff has provided the Court with a copy of his lease, confirming that he was a resident of California when he filed the state court action.  (ECF 16 at 39-44.)  Likewise, the North Dakota court found in its order of August 19, 2013, that Plaintiff resides in California.  (ECF 3, Ex. 3 at 12.)

Second, the Court must assess whether Plaintiff intended to remain in California indefinitely when he filed the state court action.  Kanter, 265 F.3d at 857.  Plaintiff declares that, after returning to California in November of 2012, he secured ongoing employment as a carpenter working for TDP Construction Services, Inc. in Sacramento.  (ECF 16, Ex. E ¶ 4.)  Plaintiff has provided the Court with two pay stubs dated December 28, 2012, and February 7, 2014, respectively.  (ECF 16 at 35, 37.)  This evidence indicates not only that Plaintiff has been employed in California since December of 2012, but also that he began paying income tax to the State of California at that time.  (Id.)  Additionally, Plaintiff presents a declaration from Claudio Bellotto ("Bellotto"), president and chief executive officer of Reno Tahoe Helicopters.  (ECF 16, Ex. D.)  Bellotto declares that Plaintiff enrolled in flight training at Reno Tahoe Helicopters on December 31, 2012.  (Id. ¶ 4.)  Moreover, he declares that Plaintiff has attended ground training classes and flight simulator sessions approximately three to four times per week since January of 2013 to obtain his commercial instrument.  (Id. ¶ 5.)  Taken together, these facts strongly indicate Plaintiff's intent to remain in California indefinitely.

Referencing property located at 428 Summit Drive in Dickinson, North Dakota,

1 Defendants argue that Vesci "has consistently represented his address on various documents as
2 North Dakota." (ECF 10 at 11:22-26.) The North Dakota court's findings mirror Defendants'
3 contention, namely that Vesci listed the Dickinson address on his North Dakota resident hunting
4 permit, and with the North Dakota Secretary of State in his contact information as registered
5 agent of B.C. Oil Logistics, an LLC with which Vesci is affiliated. (ECF 13, Ex. 1 at 6.) The
6 North Dakota court also relied upon the affidavit of Pacific West's private investigator, Jim Szell,
7 as evidence that Vesci owned real property in Dickinson. (Id.) Yet, Plaintiff has provided this
8 Court with a declaration from George Dickey ("Dickey"), owner of the property located at 428
9 Summit Drive, Dickinson, North Dakota. (ECF 16, Ex. F.) Therein, Dickey states that Plaintiff
10 began residing at 428 Summit Drive in spring of 2010, and vacated the premises in approximately
11 July of 2012. (Id. ¶ 3.) According to Dickey, Plaintiff never held an ownership interest in that
12 residence. (Id. ¶ 4.) The record is devoid of evidence indicating where else Plaintiff may have
13 resided in North Dakota. Long-standing Ninth Circuit precedent dictates that one's old domicile
14 is lost once a new one is acquired. Lew, 797 F.2d at 479, (citing Barber v. Varleta, 199 F.2d 419,
15 423 (9th Cir. 1952)). Since Defendants fail to make a credible showing that Plaintiff remains a
16 North Dakota citizen, this Court finds that Plaintiff is a citizen of California for purposes of
17 diversity jurisdiction in the instant action.[4]

18     B.    Pacific West's Citizenship

19 Despite its previous assertions to the contrary, the citizenship of Pacific West is not in
20 dispute. Plaintiff pleads that Pacific West is a citizen of both Oregon and California. (ECF 3, Ex.
21 F ¶ 2.) Initially, Defendants argued that Pacific West is solely an Oregon citizen. (ECF 1 ¶ 10.)
22 In their opposition to Plaintiff's motion to remand, however, Defendants acknowledge that

---

[4] Defendants' allegation that Plaintiff has engaged in "jurisdictional gamesmanship" is well-taken. (ECF 10 at 1:23-24). After filing counterclaims in the North Dakota action against Pacific West, SBM, SVC, Somers, and Jeff Clearly, who is not a party to this suit, Vesci inexplicably dismissed them on October 21, 2013. (Id. at 4:8-11). Less than one month later, he filed the instant case in California state court, pleading similar causes of action against nearly all of the same parties. (Id. at 4:12-18). Plaintiff's conduct smacks of forum shopping. While this Court does not condone Plaintiff's troubling litigation tactics, it is bound to objectively determine his citizenship in accordance with the rule set forth in Strotek.

1  Pacific West is, in fact, a citizen of both Oregon and California. (ECF 10 at 12:13-18.) A
2  corporation is deemed a citizen of every state in which it is incorporated as well as the state where
3  it maintains its principal place of business. 28 U.S.C. 1332(c)(1). A corporation's principal place
4  of business is where its officers direct, control and coordinate the corporation's activities. Hertz
5  Corp. v. Friend, 559 U.S. 77, 92-93 (2010). Under the "nerve center" test, a corporation is
6  generally a citizen of the state in which it maintains its corporate headquarters. Id. at 93. Thus, a
7  company incorporated in one state that maintains its principal place of business in another may
8  have dual citizenship.
9      In their notice of removal, Defendants state that Pacific West was a corporation existing
10 under the laws of the State of Oregon when Plaintiff initiated the state court action. (ECF 1 ¶ 10.)
11 Defendants affirm their assertion in opposition to Plaintiff's motion to remand. (ECF 10 at
12 12:16-17.) Plaintiff accepts Defendants' claim of Oregon citizenship, but argues that Pacific
13 West is also a citizen of California because its president/secretary and its mailing address are
14 located in California. (ECF 8 at 5:17-18.) Indeed, the Oregon Secretary of State lists a
15 McClellan, California address for Pacific West and for Somers, its president and secretary. (ECF
16 9, Ex. B.) While the Secretary of State also purports to list Beaverton, Oregon as Pacific West's
17 "principal place of business," the Supreme Court has rejected such a listing as insufficient proof
18 of a corporation's nerve center. Hertz, 559 U.S. at 97. Nevertheless, Defendants concede that
19 Pacific West is a citizen of California. (ECF 10 at 12:13-18.) Therefore, this Court finds that
20 Pacific West is a dual citizen of Oregon and California.[5]
21     C.    Forum Defendant Rule
22     Regardless of Plaintiff's citizenship, Defendants' removal to this Court is improper. A
23 civil action otherwise removable solely on the basis of diversity jurisdiction may not be removed
24 if any of the defendants is a citizen of the state in which the action is brought. 28 U.S.C.
25 1441(b)(2). Diversity jurisdiction exists to provide out-of-state litigants with a federal forum

---

[5] Having concluded that Plaintiff and Pacific West are both citizens of California for purposes of diversity jurisdiction, this Court need not determine the citizenship of SBM, SVC and Somers to find that complete diversity among the parties is lacking.

where they are free from prejudice in favor of a local party. Tosco Corp. v. Cmtys. for a Better Env't., 236 F.3d 495, 502 (9th Cir. 2001). Where the defendant is a citizen of the state in which the action is brought, however, there is no need for such protection. Lively v. Wild Oats Markets, Inc., 456 F.3d 933, 940 (9th Cir. 2006). Plaintiff timely moved the Court to remand this action to the Superior Court of California because Pacific West and the other Defendants are citizens of California for purposes of diversity jurisdiction. (ECF 8 at 6:3-5.) In their opposition, Defendants unambiguously state that "Pacific West is a [c]itizen of Oregon and California." (ECF 10 at 12:13.) Having reasoned that Pacific West is indeed a citizen of California because its nerve center is located here, this Court finds that Defendants' removal violates the forum defendant rule.

### D.   Amount in Controversy

Defendants assert that the requirements of 28 U.S.C. §1332(a) are satisfied because the amount in controversy exceeds $75,000, irrespective of interests and costs. (ECF 1 ¶ 20.) Where, as here, a plaintiff's complaint does not pray for damages of a specific dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy exceeds $75,000. Singer v. State Farm Mut. Auto. Ins. Co., 116 F. 3d 373, 376 (9th Cir. 1997). Defendants must overcome a strong presumption that the plaintiff has not claimed an amount sufficient to confer federal jurisdiction. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 401 (9th Cir. 1996).

The Court looks upon Defendants' claim to have met the amount in controversy requirement with skepticism. First, Defendants fail to tabulate damages. (ECF 1 ¶ 20.) Indeed, the only discernible amounts they reference are alleged, unpaid bonus monies of $15,000, and alleged waiting time penalties of $13,845.60. (Id.) While Defendants also recite Plaintiff's claim for back-pay of $10,000 per month under the partnership agreement, they do not indicate how many months Plaintiff may have worked. Defendants instead suggest that, "Based on the value of SVC at the time Vesci's relationship with Defendants ended, the request for declaratory judgment that Plaintiff is entitled to a 12.5% ownership in SVC alone far exceeds $75,000, exclusive of interest and costs." (Id.) If true, Defendants have certainly met their burden; however, they

provide no indication or evidence of SVC's valuation. Defendants also argue that Plaintiff's request for punitive damages and attorneys' fees "add[s] to the amount in controversy." (Id.) Yet, they provide no amount to which the Court may add such figures. Furthermore, attorneys' fees are not typically considered part of the amount in controversy. Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1155-56 (9th Cir. 1988.) Defendants are left with only bald reference to punitive and other damages in Plaintiff's complaint. Even if the parties were completely diverse, and Pacific West not a forum defendant, it is unlikely that Defendants have alleged a sufficient amount in controversy to confer diversity jurisdiction upon this Court.

## CONCLUSION

The Court finds that Defendants' removal of this action is improper for three reasons. First, this Court lacks subject matter jurisdiction because Plaintiff and Pacific West are both citizens of California, and therefore, not diverse. Second, Defendants' removal violates the forum defendant rule because Pacific West is a citizen of the state in which the action was brought. Third, even assuming that the parties are completely diverse, Defendants have failed to meet their burden of proving that the amount in controversy exceeds $75,000.

Accordingly, Plaintiff's motion to remand to state court pursuant to 28 U.S.C. §1447 is GRANTED and Defendants' motion to transfer pursuant to the first-to-file rule and 28 U.S.C. §1404(a), or in the alternative, to order a stay pending resolution of the North Dakota action is DENIED as moot.

**IT IS SO ORDERED.**

Dated: June 20, 2014

Troy L. Nunley
United States District Judge

10